**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| In re: ) | Case No. 21-40834-DRD |
| ) | Chapter 11 |
| INTERSTATE UNDERGROUND ) | |
| WAREHOUSE AND INDUSTRIAL PARK, ) | |
| INC. ) | |
| ) | |
| Debtor. ) | |

**DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS**
**AUTHORIZING THE DEBTOR TO UTILIZE CASH COLLATERAL**

Interstate Underground Warehouse and Industrial Park, Inc. ("IUW" or the "Debtor"), as debtor and debtor in possession in the above-captioned case (the "Chapter 11 Case") respectfully states as follows in support of this motion (the "Motion"):

**Relief Requested**

1. By this Motion, the Debtor seeks entry of an interim order substantially in the form of the "Interim Cash Collateral Order" and a final order (the "Final Cash Collateral Order," and both such orders, the "Cash Collateral Orders"), pursuant to sections 105, 361, 362, 363, 364, 503, 506(c) and 507 of title 11 of the United States Code (the "Bankruptcy Code") and rules 2002, 4001, 6003 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"):

    (a)    authorizing the Debtor to use the proceeds of the Prepetition Collateral (as defined herein), including Cash Collateral (as defined herein), in accordance with the terms hereof, including pursuant to the Budget (as defined herein);

    (b)    granting adequate protection to Woodmen (as defined below) for use of Cash Collateral as allowed in the Interim Cash Collateral Order;

    (c)    scheduling a final hearing (the "Final Hearing") to consider entry of a final order (the "Final Order") authorizing and approving, on a final basis, among other things, the continued use of Cash Collateral and granting adequate protection, in each case, as described in the Motion and set forth in the Interim Cash Collateral Order; and

    (d)    granting related relief.

## Jurisdiction and Venue

2. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. §157(b).

## Background

**A.    General**

3. On July 1, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor operates a network of underground storage facilities within a single location in Kansas City, Missouri. IUW houses approximately 3 million square feet of dry storage, 250,000 square feet of cooler space, and 500,000 square feet of freezer space for the storage of a variety of customer goods.

4. The Debtor is operating its business and managing its properties as a debtor in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. No trustee, examiner or official committee has been appointed in the Chapter 11 Case.

5. A comprehensive description of the Debtor's operations and events leading to the commencement of this chapter 11 case is set forth in the First Day Declaration.

**B.    Prepetition Capital Structure and Indebtedness**

6. The Debtor and its professionals conducted a lien search to determine the potential secured claimants which may claim an interest in the Debtor's cash. While it is plausible that no entity has a perfected prepetition lien on the Debtor's cash, the Debtor files this

motion out an abundance of caution so that it can continue using cash to fund its business operations in the ordinary course. The inclusion of a claim herein is not an admission of the validity of such claim, and the Debtor reserves the right to object to or otherwise contest all claims asserted against it during the Chapter 11 Case.

7. Woodmen of the World Life Insurance Society ("Woodmen") holds a secured claim with a balance of approximately $2.3 million as of the Petition Date. Woodmen's claim is secured by a commercial mortgage on the Debtor's real property located at 8201 East 23rd Street, Kansas City, Missouri, and by a security interest in, among other things, the leases and rents, equipment, accounts, fixtures and general intangibles relating or pertaining to such real property (the "Prepetition Collateral"). As of January 2, 2012, an appraisal conducted of the real property indicated a valuation of approximately $9.1 million, assuming there is a functioning freezer unit for the storage space. The cost to replace and/or repair the current freezer unit will be approximately $5 million.

8. Cash of the Debtor in existence on the Petition Date and cash that is acquired by the Debtor after the Petition Date as proceeds of Prepetition Collateral constitutes cash collateral (the "Cash Collateral") within the meaning of Section 363(a) of the Bankruptcy Code for Woodmen's benefit.[1]

9. During the prepetition period, IUW remitted the amount of $41,123.00, in principal and interest, to Woodmen per month for repayment of its loan.

**Summary Terms of Proposed Use of Cash Collateral**

---

[1] The lien search also revealed that in December 2017, Great Western Bank filed a UCC Financing Statement against the Debtor, asserting a security interest in, among other things, all inventory, equipment, accounts, all accounts receivables, chattel paper, instruments, letter of credit rights, letters of credit, deposit accounts, investment property, rights to payment, general intangibles. However, the Debtor does not currently remit payments to Great Western Bank nor has any knowledge of this UCC filing. Furthermore, Floyd Anderson asserts a second trust deed on IUW's property, which the Debtor disputes as valid.

10. The chart below contains a summary of the material terms of the Debtor's proposed use of cash collateral, together with references to the applicable sections of the relevant source documents, as required by Bankruptcy Rule 4001(b)(1)(B).

| Applicable Rule | Summary of Material Terms |
|---|---|
| **Borrower** <br> 4001(b)(1)(B)(i) | **Interstate Underground Warehouse and Industrial Park, Inc.** |
| **Purpose of Use** <br> 4001(b)(1)(B)(ii) | • Finance ordinary course of business operations, including maintain business relationships with their customers and other parties; make payroll; make capital expenditures; make adequate protection payments; pay the costs of the administration of the Chapter 11 Case; and satisfy other working capital and general corporate purposes of the Debtor. |
| **Material Terms** <br> 4001(b)(1)(B)(iii) | • Use of cash collateral during the pendency of the chapter 11 case, in accordance with the Budget, attached hereto as <u>Exhibit A</u> <br> • Grant such adequate protection as outlined below |
| **Adequate Protection** <br><br> Bankruptcy Rules 4001(b)(l)(B)(iv) | • Debtor shall be authorized to provide adequate protection to Woodmen with respect to, among other things, the use of their Cash Collateral and the Prepetition Collateral <br> • Woodmen is entitled pursuant to sections 361, 363(c)(2), and 364(d)(1) of the Bankruptcy Code, to adequate protection of their interest in the Prepetition Collateral, including Cash Collateral, in an amount equal to the diminution in value of their interests in such Collateral. <br> • Woodmen is hereby granted the following: <br> • Adequate Protection Liens. As security for the payment of the Adequate Protection Obligations, Woodmen is hereby granted (effective and perfected upon the date of this Interim Cash Collateral Order and without the necessity of the execution by the Debtor of security agreements, pledge agreements, mortgages, financing statements or other agreements) a valid, perfected replacement security interest in and lien on all of the Collateral to the same extent, validity, and priority of their respective pre-petition liens (the "<u>Adequate Protection Liens</u>") and only to the extent any Cash Collateral is diminished post-petition together with any proceeds thereof <br> • As further adequate protection, IUW will continue remitting the monthly payment in the amount of $41,123.00 to Woodmen. |
| **Entities with Interests in, and Use of, Cash Collateral** <br><br> Bankruptcy Rule 4001(b)(l)(B)(i) | <u>The following prepetition secured parties may have an interest in Cash Collateral</u>: <br> • Woodmen of the World Life Insurance Society <br> • Great Western Bank [disputed] <br> • Floyd Anderson [disputed] |

**<u>Basis for Relief Requested</u>**

4

11. Section 363(c) of the Bankruptcy Code governs a debtor's use of a secured creditor's cash collateral. Specifically, that provision provides, in pertinent part, that:

> The trustee may not use, sell, or lease cash collateral . . . unless—
>
> (A) each entity that has an interest in such cash collateral consents; or
>
> (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section [363].

11 U.S.C. § 363(c)(2). Furthermore, section 363(e) provides that "on request of an entity that has an interest in property . . . proposed to be used, sold or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e).

12. Here, the Debtor believes that use of Cash Collateral pursuant to the terms herein is the best and only option available to the Debtor to finance the Chapter 11 Case and will maximize the value of the Debtor's estate by allowing the Debtor to operate in the ordinary course while pursuing a successful reorganization. Accordingly, use of Cash Collateral is a sound exercise of the Debtor's business judgment. The Debtor attempted to consult with Woodmen prior to filing this Motion, but the Debtor has not received a response.[2] Therefore, the Debtor should be authorized to use the Cash Collateral on the terms set forth in the Interim Order.

13. The Debtor submits that the interests of Woodmen will be adequately protected, and the proposed adequate protection is authorized under applicable law. A debtor may obtain post-petition credit "secured by a senior or equal lien on property of the estate that is subject to a lien only if" the debtor, among other things, provides "adequate protection" to those parties whose liens are primed. *See* 11 U.S.C. § 364(d)(1)(B). What constitutes adequate protection is decided on a case-by-case basis, and adequate protection may be provided in

---

[2] Because the Debtor does not believe Great Western Bank has a valid interest in Cash Collateral, the Debtor did not confer with Great Western Bank.

5

various forms, including payment of adequate protection fees, payment of interest, or granting of replacement liens or administrative claims. *See, e.g.*, *In re Martin*, 761 F.2d 472, 474 (8th Cir. 1985) ("[S]uch matters 'are [to be] left to case-by-case interpretation and development.'") (internal citations omitted). The critical purpose of adequate protection is to guard against the diminution of a secured creditor's collateral during the period when such collateral is being used by the debtor in possession. *See Martin*, 761 F.2d at 474; *In re Johnson*, 90 B.R. 973, 978 (Bankr. D. Minn. 1988) (holding that secured creditor is not impaired and is not entitled to receive adequate protection payments where value of collateral does not decline).

14. Woodmen is entitled to adequate protection for, among other things, the use of Cash Collateral and other Prepetition Collateral to the extent of any aggregate diminution in value of their interest in the Prepetition Collateral, from and after the Petition Date. Such adequate protection will consist of replacement liens and claims on all collateral acquired post-petition to the extent of any diminution in value and to the same extent that such liens existed during the prepetition period. Further, the Debtor will continue remitting the monthly mortgage payment to Woodmen in the same amount as during the prepetition period. Finally, Woodmen will also receive reasonable access to the Debtor's facilities, management, books, and records as required under the applicable loan documents.

### The Requirements of Bankruptcy Rule 6003 Are Satisfied

15. The Debtor seeks immediate authorization for the relief requested in this Motion. Pursuant to Bankruptcy Rule 6003(b), a bankruptcy court cannot grant "a motion to use, sell, lease or otherwise incur an obligation regarding property of the estate, including a motion to pay

all or part of a claim that arose before the filing of the petition" within the first twenty-one (21) days after the petition date unless the relief is "necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003(b). For the reasons set forth herein, Rule 6003(b) has been satisfied.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

16. By this Motion, the Debtor requests that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtor has established cause for a waiver of any stay of the effectiveness of the order approving this Motion under Bankruptcy Rule 6004(h). For the reasons set forth herein and in the First Day Declarations, the Debtor submits that notice of the relief requested herein is appropriate under the circumstances and that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h).

WHEREFORE, the Debtor respectfully requests entry of the proposed Cash Collateral Orders, granting the relief requested herein and such other relief as is just and proper.

Dated: July 2, 2021
Kansas City, Missouri

Respectfully submitted,

ARMSTRONG TEASDALE LLP

_/s/ Pamela Putnam_
Pamela Putnam, MO 61158
2345 Grand Blvd. Suite 1500
Kansas City, MO 64108
Telephone: (816) 221-3420
Facsimile: (816) 221-0786
Email: pputnam@atllp.com

- and -

Richard W. Engel, Jr., MO 34641
Erin M. Edelman, MO 67374 (pro hac vice motion pending)
**ARMSTRONG TEASDALE LLP**
7700 Forsyth Boulevard, Suite 1800
St. Louis, Missouri 63105
Telephone: (314) 621-5070
Facsimile: (314) 612-2239
Email: rengel@atllp.com
Email: eedelman@atllp.com

*Proposed Counsel to the Debtor*

**<u>Exhibit A</u>**

**The Budget**

| | | 6/25/2021 | 7/2/2021 | 7/9/2021 | 7/16/2021 | 7/23/2021 | 7/30/2021 | 8/6/2021 | 8/13/2021 | 8/20/2021 | 8/27/2021 | 9/3/2021 | 9/10/2021 | 9/17/2021 | 9/24/2021 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Bal | | 100,000 | 131,600 | 147,650 | 120,350 | 102,300 | 111,085 | 86,935 | 85,935 | 68,385 | 77,170 | 49,520 | 26,720 | 10,220 | 44,920 |
| Projected Income | Warehouse | 50,000 | 120,000 | 50,000 | 50,000 | 50,000 | 50,000 | 120,000 | 50,000 | 50,000 | 50,000 | 120,000 | 50,000 | 50,000 | 50,000 |
| | Selg-Storage | 3,500 | 7,000 | 3,500 | 3,500 | 3,500 | 7,000 | 3,500 | 3,500 | 3,500 | 3,500 | 7,000 | 3,500 | 3,500 | 3,500 |
| | Weld Bldg Dep | | | 100,000 | | | | 100,000 | | | | | | | |
| Total Projected Income | | 53,500 | 227,000 | 53,500 | 53,500 | 53,500 | 57,000 | 223,500 | 53,500 | 53,500 | 53,500 | 127,000 | 53,500 | 53,500 | 53,500 |
| Projected Expenese | Payroll | | 26,000 | | 26,000 | | 26,000 | | 26,000 | | 26,000 | | 26,000 | | 26,000 |
| | P/R Taxes | | 2,500 | | 2,500 | | 2,500 | | 2,500 | | 2,500 | | 2,500 | | 2,500 |
| | P/R fees | | 850 | | 850 | | 850 | | 850 | | 850 | | 850 | | 850 |
| | Insurance-Med | | 7,000 | | 7,000 | | 7,000 | | 7,000 | | 7,000 | | 7,000 | | 7,000 |
| | 401K exp | | 400 | | 400 | | 400 | | 900 | | 400 | | 400 | | 400 |
| | Contract Labor | | 10,000 | | 10,000 | | 10,000 | | 10,000 | | 10,000 | | 10,000 | | 10,000 |
| | Repairs Freezer | 5,000 | 25,000 | 5,000 | 5,000 | 25,000 | 5,000 | 5,000 | 5,000 | 25,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| | Warehouse Exp/repairs | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 |
| | Electricity | | | 50,000 | | | | 50,000 | | | | 50,000 | | | |
| | Phones/Cell | 3,000 | | | | 3,000 | | | | 3,000 | | | | | 3,000 |
| | Water | | 2,000 | | | | | 2,000 | | | | 2,000 | | | |
| | Trash | | | 4,000 | | | | | 4,000 | | | | 4,000 | | |
| | Insurance-Prop | | 23,000 | | | | | 23,000 | | | | 23,000 | | | |
| | Insurance-W/C | | 1,000 | | 1,000 | | 1,000 | | 1,000 | | 1,000 | | 1,000 | | 1,000 |
| | Insurance-Vehicles | | | 750 | | | | 750 | | | | | 750 | | |
| | Mortgage-Woodman | | 41,250 | | | | | 41,250 | | | | 41,250 | | | |
| | Office Exp | | 6,500 | | | | | 6,500 | | | | 6,500 | | | |
| | Bank Charges | 500 | | | | 500 | | | | 500 | | | | | 500 |
| | Merchant Fees | 3,000 | | | | 3,000 | | | | 3,000 | | | | | 3,000 |
| | Prof Fees A/T | | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 |
| | Prof Fees L/R | | 8,000 | | | | 8,000 | | | | 8,000 | | | | 8,000 |
| | Prof Fees Klawuhn | | | | 5,000 | | | | | | | | | | |
| | CBD Inv | 5,400 | | | | | 5,400 | | | | 5,400 | | | | |
| | Delivery Expense | 2,500 | | | | | 2,500 | | | | 2,500 | | | | |
| | AndersonWeld Pmt | | 43,950 | | | | | 43,950 | | | | | | | |
| | ServiceMaster | | 1,000 | | | | | 1,000 | | | | 1,000 | | | |
| | CIT Lease | | | | 1,000 | | | | 1,000 | | | | | 1,000 | |
| | Pitney Lease | | | | 300 | | | | 300 | | | | | 300 | |
| | Cameras | | | | | | | 30,000 | | | | | | | |
| | Lease Consult. | | | | | 715 | | | 715 | | | | | | 715 |
| | Ford Pmt | | | 1,050 | | | | 1,050 | | | | 1,050 | | | |
| | Prof Fees Accting | | | 5000 | | | | 5000 | | | | 5000 | | | |
| | Outside Services | | | 2,500 | | | | 2,500 | | | | 2,500 | | | |
| | | | | | | | | | | | | | | | |
| | Total Est Expenses | 21,900 | 210,950 | 80,800 | 71,550 | 44,715 | 81,150 | 224,500 | 71,050 | 44,715 | 81,150 | 149,800 | 70,000 | 18,800 | 80,465 |
| | Net | | 31,600 | 16,050 | -27,300 | -18,050 | 8,785 | -24,150 | -1,000 | -17,550 | 8,785 | -27,650 | -22,800 | -16,500 | 34,700 | -26,965 |