# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| In re: | ) |
| | ) |
| INTERSTATE UNDERGROUND WAREHOUSE and INDUSTRIAL PARK, INC., | ) Case No. 21-40834-DRD ) ) Chapter 11 |
| | ) |
| Debtor. | ) |
| | ) |

## DECLARATION OF LESLIE REEDER
## IN SUPPORT OF DEBTOR'S FIRST DAY MOTIONS

I, Leslie Reeder make the following declaration under penalty of perjury:

1. My name is Leslie Reeder, and I am over 21 years of age and am competent to testify to the matters herein.

2. I am the Chief Executive Officer ("CEO") of Interstate Underground Warehouse and Industrial Park, Inc. (the "Debtor" or "IUW").

3. I am familiar with the Debtor's day-to-day operations, business and financial affairs.

4. I submit this declaration (the "Declaration") to assist the Court and other parties in interest in understanding the circumstances that compelled the commencement of this Chapter 11 case and in support of: (i) the Debtor's petition for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") filed on July 1, 2021 (the "Petition Date"); and (ii) the relief, in the form of motions and applications, that the Debtor has requested of the Court (collectively, the "First Day Pleadings").

5. Except as otherwise indicated herein, all facts set forth in this Declaration are based upon my personal knowledge, my discussions with other members of the Debtor's senior management, my review of relevant documents, or my opinion based upon experience, knowledge,

and information concerning the Debtor's operations and financial affairs. If called upon to testify, I would testify competently to the facts set forth in this Declaration. I am authorized to submit this Declaration on behalf of the Debtor.

6.      This Declaration is intended to provide a summary overview of the Debtor and this Chapter 11 case, including the Debtor's business, circumstances giving rise to the commencement of the Chapter 11 case, and the overview requested in the First Day Motions.

### *The Debtor's Business and Background Information*

7.      Founded in 1978, IUW converted underground limestone mines into expansive storage for customer goods. IUW operates a network of underground storage facilities within a single location in Kansas City, Missouri.  IUW houses approximately 3 million square feet of dry storage, 250,000 square feet of cooler space, and 500,000 square feet of freezer space for the storage of a variety of customer goods, ranging from coffins to spices. IUW provides warehousing, distribution, fulfillment, and storage services for its wide-ranging customer base.

8.      Woodmen of the World Life Insurance Society ("Woodmen") served as the Debtor's prepetition secured lender and currently holds a secured claim against the Debtor with a loan balance of approximately $2.3 million as of the Petition Date. Woodmen's claim is secured by a commercial mortgage on the Debtor's real property located at 8201 East 23rd Street, Kansas City, Missouri, and by a security interest in, among other things, the leases and rents, equipment, accounts, fixtures and general intangibles relating or pertaining to such real property. As described below, the Debtor is requesting this Court's authorization to use Woodmen's cash collateral to continue business operations and fund this chapter 11 case.  As of January 2, 2012, an appraisal conducted of the real property indicated a valuation of approximately $9.1 million, assuming there is a functioning freezer unit for the storage space.

*Events Leading to the Chapter 11 Cases*

9.      At the request of Sammy Jo Reeder, ("Sammy Jo"), the sole equity holder of the Debtor, in March 2020, I moved back to Kansas City and took control of IUW's operations. While IUW was generating enough revenue to satisfy its normal operations, it appeared that there were non-core obligations being asserted against IUW that Sammy Jo knew nothing about. (Sammy Jo is an elderly woman living in a nursing facility in California). Apparently, unbeknownst to Sammy Jo, and to a certain extent, the management staff, Wayne Reeder ("W. Reeder") had taken numerous unauthorized, or deceptively asserting authority to perform, actions allegedly binding IUW to various obligations that he was incurring for his own personal benefit, unrelated to the operations of IUW and caused IUW to become financial unstable. In assuming an active role in managing IUW, my goals were to increase cash flow and rid IUW of unnecessary and wasteful spending practices. I focused on increasing the number of profitable tenants by evicting tenants paying reduced rates or no rent at all, increased rental rates of existing customers, and re-evaluated vendor pricing. Furthermore, IUW renovated the entire property to attract more credit-worthy tenants, implemented a new interactive website, increased IUW's online presence, and installed new signage. I also terminated approximately five nonessential salaried full-time employees. Despite my efforts to address IUW's financial issues, W. Reeder involved IUW in his fraudulent business transactions, which hindered IUW's ongoing operations.

10.     The Debtor's chapter 11 filing results from a multitude of factors and events. First, as mentioned above, W. Reeder engaged in several business ventures and real estate projects outside of IUW, which later failed, and improperly involved IUW. One of those ventures included Park Reserve, LLC ("Park Reserve"). Essentially, IUW was used to allegedly guarantee loans on Park Reserve projects without proper authority from IUW. W. Reeder forged my signature and Sammy Jo's signature on behalf of IUW. He also extensively misappropriated funds and diverted

3

IUW's cash in order to pay bills for these outside real estate and other projects. These practices severely impacted cash flow. Now, IUW requires approximately $5 million in funding to repair a freezer for part of its underground storage. IUW cannot obtain this funding without first cleaning up its balance sheet and addressing its liabilities through the chapter 11 process. IUW does not have sufficient liquidity to continue their businesses outside the protection of this Court and has been forced to seek relief pursuant to chapter 11 of the Bankruptcy Code.

11. In connection with W. Reeder's fraudulent and unauthorized business transactions, multiple lawsuits, including by Citizens Bank & Trust Co. ("Citizens Bank"), have been filed against IUW and other entities. In connection therewith, in 2007, Citizens Bank made a construction loan to Park Reserve in the original principal amount of $6,837,100, for use in redeveloping the site of the former Trinity Hospital complex into condominiums. In connection with that loan, in 2011, Citizens Bank alleges IUW executed a guaranty whereby IUW agreed to fully guarantee the loan to Park Reserve. The redevelopment project ultimately failed, and on May 25, 2021, Citizens Bank filed a lawsuit filed against Park Reserve and IUW for breach of contract and to appoint a receiver to take control of the Park Reserve property. *See Citizens Bank & Trust Co. v. Park Reserve, LLC et al*, Case No. 2116-CV11199 (Circuit Court of Jackson County) (the "Citizens Bank Lawsuit"). IUW disputes Citizens Bank's claims against IUW, as any guaranty executed in favor of Citizens Bank would have been done so fraudulently and without the knowledge of anyone at IUW with proper authority.

12. Other than the Citizens Bank Lawsuit, the following lawsuits are pending against IUW, many of which have stemmed from W. Reeder's fraudulent and unauthorized business conduct:

- *Jonathan Justus v. Interstate Underground Warehouse and Industrial Park, Inc. et al.* - Case 2116-CV01375 (Circuit Court of Jackson County) (allegations of property damage)

- *Newly Wed Foods, Inc. v. Interstate Underground Warehouse and Industrial Park, Inc.* – Case No. 2116-CV02499 (Circuit Court of Jackson County) (allegations related to property damage)

- *Young v. Park Reserve, LLC et al.* – Case No. 1916-CV02432 (Circuit Court of Jackson County) (allegations of misrepresentation related to Park Reserve)

- *Morgan v. Park Reserve, LLC et al.* – Case No. 1916-CV09195 (Circuit Court of Jackson County) (allegations of misrepresentation related to Park Reserve LLC)

- *Schulte v. Park Reserve, LLC et al.* – Case No. 1916-CV15246 (Circuit Court of Jackson County) (allegations of misrepresentation related to Park Reserve LLC)

- *Custom Sleep Center v. Interstate Underground Warehouse and Industrial Park, Inc.* Case No. 1916-CV25711 (Circuit Court of Jackson County) (allegations of property damage)

- *Bodine Ashner Builders v. Interstate Underground Warehouse and Industrial Park, Inc.* – Case No. 1916-CV26147 (Circuit Court of Jackson County) (allegations of property damage)

- *Kline Van and Special v. Interstate Underground Warehouse and Industrial Park, Inc.* Case No. 1916-CV32949 (Circuit Court of Jackson County) (allegations of property damage)

Furthermore, on May 29, 2020, W. Reeder filed a lawsuit against me, IUW, Sammy Jo, and Stacy Reeder Robinson in the Circuit Court of Jackson County (Case No. 2016-CV12471), alleging that W. Reeder is part owner of IUW. IUW believes W. Reeder's claims are completely inaccurate and baseless, and IUW has been vigorously defending this lawsuit.

13. With the bankruptcy, the Debtor intends to file a plan of reorganization which addresses and resolves the underlying claims in the above litigation in a single forum. Furthermore, the Debtor will propose a plan, which envisions refocusing the business operations to maximize the generation of cash flow and seek the judicious reduction of costs and restructuring of debt.

***The First Day Motions***

5

14. In connection with its chapter 11 petition, IUW files several motions seeking emergency relief from this Court in order to stabilize the company and allow IUW to continue business operations in the ordinary course (collectively, the "First Day Motions"). I have reviewed each of the First Day Motions or had their contents explained to me, including the exhibits thereto, and believe that the Debtor would suffer immediate and irreparable harm absent the ability to continue their business operations, as requested in the First Day Motions. Information with respect to each First Day Motion is provided below and additional detail is contained in each First Day Motion. Capitalized terms, to the extent not otherwise defined herein, have the meanings provided in the respective First Day Motions.

### *(a)    The Employee Wages and Benefits Motion*

15. The Debtor employs 18 people as both management and staff.  The Debtor requests authority to pay certain prepetition amounts and maintain and continue to honor and pay, all amounts with respect to the Debtor's business practices, programs, and policies for their employees as such were in effect on the Petition Date and as such may be modified or supplemented from time to time in the ordinary course of business as provided in the motion, including, among other related expenses, unpaid wages, payroll taxes and fees, and other amounts related to employee benefit programs. The payment of such amounts is critical to the ongoing operations of the company. Therefore, I believe that the relief requested in the Employee Wages and Benefits Motion is appropriate.

### *(b)    The Cash Management Motion*

16. Pursuant to the Cash Management Motion, the Debtor seeks entry of interim and final orders authorizing, but not directing, the Debtor to, among related relief, (a) continue to operate the Cash Management System, (b) honor certain prepetition obligations related thereto, (c)

maintain existing business forms, and (d) continue to maintain business relationships with each other consistent with historical practice. Any disruption of the Cash Management System would have an immediate adverse effect on the Debtor's business operations to the detriment of its estate, as its business requires prompt access to cash and accurate cash tracking. Accordingly, to minimize disruption caused by this chapter 11 case and to maximize the value of the Debtor's estate, the Debtor requests authority to continue to utilize its existing Cash Management System during the pendency of this chapter 11 case.

17. Furthermore, prior to the Petition Date, the Debtor utilized form documents when conducting business, including but not limited to letterhead, checks, invoices, and purchase orders. The Debtor requests this Court's authority to allow the Debtor to continue using existing business forms. Printing new forms with the label "debtor in possession" would prove costly to the Debtor's estate.

18. Accordingly, I believe that the relief requested in the Cash Management Motion is necessary to continue the Debtor's operations, preserve the value of the Debtor's estate and is in the best of interests of the creditors and stakeholder.

*(c)* **The Insurance Motion**

19. Pursuant to the Insurance Motion, the Debtor seeks entry of interim and final orders authorizing the Debtor to (a) continue insurance coverage entered into prepetition and satisfy prepetition obligations, if any, related thereto in the ordinary course of business and (b) renew, supplement, or purchase insurance coverage in the ordinary course of business on a post-petition basis, as needed.

20. I believe that continuation of the Insurance Policies and payment of the Premiums, along with the relevant fees, as applicable, are essential to the preservation of the value of the

Debtor's properties and assets. Accordingly, on behalf of the Debtor, I respectfully submit that the Court should approve the Insurance Motion.

### (d)     The Utility Motion

21.     In the ordinary course of business, the Debtor obtains Utility Services from various Utility Providers. While there is seasonal fluctuation, on average, the Debtor has historically spent approximately $60,000.00 per month on Utility Services.

22.     The Debtor intends to timely pay all post-petition obligations owed to the Utility Providers in the ordinary course of business.   The Debtor will also provide the Utility Providers adequate assurance of payment within the meaning of section 366 of the Bankruptcy Code, as fully outlined in the underlying motion.

23.     The Debtor submits that the circumstances of this chapter 11 case warrant granting the requested relief in the Utility Motion, and that doing so is in the best interests of all parties.

### (e)     The Cash Collateral Motion

21.     The Debtor does not have sufficient available sources of working capital and financing to carry on the operation of their businesses without the use of the cash collateral. In the absence of an order granting the use of cash collateral, serious and irreparable harm to the Debtor and its estate will occur.

22.     As adequate protection for Debtor's use of the cash collateral, the Debtor will agree to use cash collateral only in strict accordance with the terms of the proposed Interim Order and the proposed budget. Furthermore, the Debtor proposes that Woodmen be granted replacement liens in all of the Debtor's collateral to the same extent, validity, and priority that existed as of the Petition Date.

23.     The Debtor shall not use cash collateral other than as ordered by the Court. The Debtor is requesting that they be authorized to immediately use cash collateral to the extent

necessary to avoid immediate and irreparable harm to the estate pending an emergency hearing on use of cash collateral. As fully set forth in the Cash Collateral Motion, the relief requested therein is warranted.

24. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information and belief.

By: */s/ Leslie Reeder*
Leslie Reeder
Chief Executive Officer