IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| *In re* | |
|---|---|
| **Interstate Underground Warehouse and Industrial Park, Inc.,** | Case No. 21-40834<br>Chapter 11 |
| **Debtor** | |

## STIPULATED MOTION FOR ASSUMPTION OF AGREEMENT

Debtor Interstate Underground Warehouse and Industrial Park, Inc. ("Debtor" or "Interstate") and Creditors Empire Holding, Inc., U.S. Patriot Services, American Veteran KCA, and American Veteran STLA (collectively "Empire") (Interstate and Empire are collectively the "Parties") by and through their respective undersigned counsel hereby move this Court to approve the Parties' stipulation set forth below. In support of this motion the Parties state as follows.

Empire and Interstate are parties to a *Storage and Delivery Agreement* ("Agreement") which provided for the storage and delivery by Interstate of caskets (coffins) to veterans of the U.S. Military. Since Interstate filed for bankruptcy, there have been 37 veterans who have died. Interstate did not deliver those caskets. Rather, the costs of those deliveries were borne by Empire. The parties have agreed that Interstate will assume the Contract pursuant to the following stipulated provisions.

1. Subject to the stipulations below, Interstate assumes the Agreement pursuant to 11 U.S.C. § 365.

2. These stipulations shall control and supersede any contradicting provision in the Agreement. For purposes of these stipulations, the term "Approval Date" shall mean the date that an order of the Bankruptcy Court approving the assumption of the Agreement becomes final and non-appealable. Additionally, for purposes of these stipulations, the term "Gap Period" refers to the period of time between (a) the date the Parties file this stipulated motion with the Court and (b) the Approval Date.

1

3. Interstate shall deliver to deceased veterans at its own cost and expense (a) the next 37 caskets plus (b) a number of caskets equal to the number of caskets that Empire delivers during the Gap Period. The delivery of these caskets shall constitute Interstate's cure costs under the Agreement.

4. Once Interstate has delivered all of the caskets required by the preceding paragraph then, continuing thereafter, the cost of delivering caskets will be divided between the Parties as follows:

    a. Interstate shall be responsible for supplying the driver and a vehicle to transport the casket.

    b. Empire shall pay the cost of gas for delivering the casket. The cost of gas will be computed using the following formula:

**Amount Paid = (Published National Gas Price Average * Total Roundtrip Miles)/20.**

The "Published National Gas Price Average" shall be determined by using the national gas price average as published by AAA at the following website https://gasprices.aaa.com/ on the date of the delivery.

The "Total Round Trip Miles" shall be determined by using Google Maps to determine the total number of miles from Interstate's location to the delivery point and then multiplying that figure by two (to account for the round trip delivery).

By way of example only, suppose that the Published National Gas Price Average was $4.50 on the delivery date and the delivery destination was 270 miles from Interstate's facility (i.e., 540 roundtrip miles). In that situation the Amount Paid would be $121.50 =($4.50*540)/20.

5. Interstate's facility is comprised, in part, of a warehouse portion where various items are stored and to which Interstate employees have access (hereinafter the "Warehouse") and dry-storage units which are located at Interstate's facility but which are only accessible by tenants and not by Interstate employees (hereinafter the "Dry-Storage"). Currently, all of Empire's caskets are located in the Warehouse portion of the facility. A portion of those caskets are wrapped and stored vertically (hereinafter the "Vertical Caskets") and the remaining portion are unwrapped and are laying down in a horizontal manner (hereinafter the "Horizontal Caskets").

6. Within two-months of the Approval Date, Empire shall conduct a casket-by-casket inspection of the Horizontal Caskets to identify (a) which caskets can be refurbished and (b) which caskets are too far beyond repair to be refurbished. Within one month following that inspection, Empire shall remove at its expense any caskets from the Warehouse that are too

far beyond repair to be salvageable. With respect to Horizontal Caskets that can be refurbished, Empire will coordinate to have them temporarily removed (likely four caskets at a time) where they will be refurbished and then re-delivered to Interstate where they will be stored in a wrapped and upright manner in a Dry-Storage unit. Interstate will fully cooperate in this process including providing sufficient Dry-Storage space such that, once they are refurbished, all Horizontal Caskets shall be stored in an upright manner in the Dry-Storage unit of the facility. The refurbished caskets will be wrapped and/or placed in the Dry-Storage unit solely by Empire and at Empire's cost. No later than nine months from the Approval Date Empire will complete the refurbishment process such that all Horizontal Caskets shall be either removed from the Warehouse or refurbished and re-delivered to Interstate where they will be stored wrapped and upright in Dry-Storage by Empire's agents.

7. Empire will incur the time and expense of contacting all veterans to verify that they are alive. Empire will complete this process within two-months of the Approval Date. To the extent that Empire determines that there are any veterans who have died but whose families did not take delivery of the casket, then Empire shall arrange for the removal of the caskets (whether they be Horizontal Caskets or Vertical Caskets) from the Interstate facility within three-months of the Approval Date.

8. Empire shall remove all Caskets (wherever stored) from Interstate's facility within three-years from the Approval Date. Following the expiration of the three-year period, Interstate shall have no further obligations under the Agreement to either store or deliver caskets. To the extent that the parties desire to do any further business with one another then they shall do so only upon entering into a new, written agreement. Empire agrees that it will not store any new caskets. This agreement relates solely to the existing inventory of caskets.

9. Empire will not object to any Plan of Reorganization (or amended Plan of Reorganization) that Interstate may propose *provided* that any such plan is consistent with the terms of this stipulation. Plan that Interstate's Empire shall

WHEREFORE, the Parties request that this Court approve the foregoing stipulation and enter all other relief in favor of the Parties that this Court deems just and equitable.

3

Dated: July 12, 2022.

Respectfully submitted,

| KRIGEL & KRIGEL, P.C. | HUSCH BLACKWELL LLP |
|---|---|
| */s/ Erlene W. Krigel*<br>Erlene W. Krigel, No. 29416<br>4520 Main Suite 700<br>Kansas City, Missouri 64111<br>Telephone: (816) 756-5800<br>Facsimile: (816) 756-1999<br>ekrigel@krigelandkrigel.com | */s/ Michael D. Fielding*<br>Michael D. Fielding, MO 53124<br>4801 Main Street, Suite 1000<br>Kansas City, MO  64112<br>Telephone:    (816) 983-8000<br>Facsimile:     (816) 983-8080<br>michael.fielding@huschblackwell.com |
| *Counsel for Interstate Underground Warehouse and Industrial Park, Inc.* | *Counsel for Creditors Empire Holding, Inc., U.S. Patriot Services, American Veteran KCA, and American Veteran STLA* |

## **CERTIFICATE OF SERVICE**

      I hereby certify that on July 12, 2022, the above and foregoing document was filed electronically using CM/ECF and a true and correct copy of the above and foregoing was served as follows:

      X_____ upon filing, the Court's electronic noticing systems and sent notice to all parties participating in the CM/ECF system in this matter.

                                              */s/ Michael D. Fielding*
                                               Michael D. Fielding MO 53124