IN THE UNITED STATES BANKRUPTCY COURT FOR
THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| In Re: ) | |
| ) | |
| INTERSTATE UNDERGROUND WAREHOUSE ) | Case No. 21-40834 |
| AND INDUSTRIAL PARK, INC., ) | Chapter 11 |
| ) | |
| Debtor ) | |

### DEBTOR'S **FOURTH AMENDED** PLAN OF REORGANIZATION

Interstate Underground Warehouse and Industrial Park, Inc. proposes the following Fourth Amended Plan of Reorganization pursuant to Chapter 11 of the Bankruptcy Code, 11 U.S.C. Section 1101 et seq.

## I. DEFINITIONS

For the purpose of this Fourth Amended Plan of Reorganization ("Plan"), the following terms shall have the respective meanings hereinafter set forth:

ALL TERMS USED IN THIS PLAN WHICH ARE NOT EXPRESSLY DEFINED HEREIN SHALL HAVE THE RESPECTIVE MEANINGS GIVEN SUCH TERMS IN '101 OF THE BANKRUPTCY CODE OR AS OTHERWISE DEFINED IN APPLICABLE PROVISIONS OF THE CODE OR THE RULES.

1.01    ALLOWED ADMINISTRATIVE CLAIM shall mean an Allowed Claim for which a Claimant asserts and is determined to be entitled to priority pursuant to §503 and §507(a)(1) of the Bankruptcy Code.

1.02    ALLOWED CLAIM shall mean a Claim against the Debtor that (i) is allowed by Final Order, or (ii) is scheduled as liquidated, undisputed or non-contingent by the Debtor in its schedules filed with the Bankruptcy Court as they may be amended or supplemented, or (iii) is timely filed with the Clerk of the Bankruptcy Court and no objection has been made to the allowance thereof.

1.03    ALLOWED PRIORITY CLAIM shall mean an Allowed Claim for which a Claimant asserts and is determined to be entitled to priority pursuant to §507(a) of the Bankruptcy Code, other than §507(a)(1) and (a)(2).

1.04    ALLOWED SECURED CLAIM shall mean an Allowed Claim for which the Claimant asserts and is determined by a Final Order to hold a valid, perfected and enforceable lien, security interest or other interest or encumbrance in property in which the Debtor has an interest not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, or an Allowed Claim for which the Claimant asserts a set-off under §553 of the Bankruptcy

Code, of the Claimant's interest in the Debtor=s interest in the property or to the extent of the amount subject to such set-off as the case may be.

  1.05  ALLOWED UNSECURED NON-PRIORITY CLAIM shall mean an Allowed Claim for which the Claimant has not asserted or is determined by a Final Order not to hold a valid, perfected and enforceable lien, security interest or other interest in or encumbrance against the property of the Debtor or right to set-off to secure the payment of such Claim.

  1.06  BANKRUPTCY CODE OR CODE shall mean the United States Bankruptcy Code as embodied in Title 11 of the United States Code, and all amendments thereof which are applicable to this proceeding.

  1.07  BANKRUPTCY COURT OR COURT shall mean the United States Bankruptcy Court for the Western District of Missouri in which the Chapter 11 proceeding of the Debtor has been filed, or such other court as may hereafter have jurisdiction of an act with respect to the Chapter 11 proceeding of the Debtor.

  1.08  CLAIM shall have the meaning set forth in §101(4) of the Bankruptcy Code.

  1.09  CLAIMANT shall mean the holder of a Claim.

  1.10  CLASS shall mean a category of Claimants or interests which are substantially similar to the other Claims or interests in such Class.

  1.11  CONFIRMATION DATE shall mean the date of the entry of a Final Order confirming the Plan of Reorganization.

  1.12  CONFIRMATION ORDER shall mean the Order entered by the Court confirming the Plan in accordance with §1129 of the Bankruptcy Code.

  1.13  DEBTOR shall mean INTERSTATE UNDERGROUND WAREHOUSE AND INDUSTRIAL PARK, INC.

  1.14  EFFECTIVE DATE shall mean thirty (30) days following the date that the Order of Confirmation is final and non-appealable.

  1.15  EQUITY INTEREST shall mean the rights of ownership in property of the Debtor.

  1.16  FILING DATE shall mean July 1, 2021.

  1.17  FINAL ORDER shall mean an order of the Bankruptcy Court that has not been reversed, modified, amended or stayed, and the time for appeal to seek review, certiorari or rehearing of which has expired and as to which no appeal, review or rehearing is pending, and has become conclusive of all matters adjudicated thereby and is in full force and effect.

1.18    PLAN shall mean this Plan of Reorganization as it may be amended or modified and all exhibits, schedules or attachments filed herewith or which may be hereinafter submitted.

1.19    PRO RATA, with respect to the holder of any Claim, shall mean in the same proportion that the amount of the Allowed Claim of such holder in any Class of Claims described in Article II bears to the aggregate amount of all Claims in such Class, including in such aggregate amount both the Allowed Claims and all disputed Claims as of the date of any payment made pursuant to this Plan.

## II. CLASSIFICATION OF CLAIMS AND INTERESTS

All Claims and Equity Interests against the Debtor of any nature whatsoever, whether or not scheduled; liquidated or unliquidated; absolute or contingent, including all Claims arising from transactions of the Debtor or rejection of executory contracts, whether resulting in an Allowed Claim or not; and all interests arising from the ownership of the Debtor, shall be bound by the provisions of this Plan. The Claims and interests are hereby classified as follows:

2.1.    Class One includes the claim of Woodmen of the World Life Insurance Society ("Woodmen"), secured by a senior deed of trust on the Debtor's real estate and a senior lien on all of Debtor's personal property, including all equipment, inventory, accounts receivable, contract rights and general intangibles. As of July 1, 2021, the principal balance was $2,269,303.25 and the accumulated interest was $12,805.62, for a total of $2,282,108.87. The principal balance as of 3/15/22 was $2,033,497.26. The Promissory Note is dated 3/19/07, and was the most recent extension of the original loan taken out in May, 1996. The outstanding Note matured April 1, 2022 and bears interest at the rate of 6.81% per annum. The Debtor has been presently paying $41,348/month, which includes an escrow for real estate taxes. The Debtor agrees to pay reasonable attorneys' fees as Woodmen is over-secured.

2.2.    Class Two includes the claim of C. Floyd and Sharon Anderson ("Anderson"), secured by a junior Deed of Trust on Debtor's real estate. The amount of the Anderson's Claim is the sum, as of October 31, 2021, is $3,822,800 plus a claim for attorneys' fees of $25,000. The Promissory Note was executed by a wholly owned subsidiary Interstate Underground Warehouse LLC, which pledged its real estate (known as the Weld Wheel properties). The Harrisonville Senior Care Center LLC also pledged its real estate to secure said Note. The Weld Wheel properties were sold at the end of December 2021 and Anderson received $3,109,466.02. The Anderson Note was not fully paid, and Anderson is owed $863,228 (as of 12/28/21). The Debtor is assisting Harrisonville Senior Care Center LLC with the sale of its real estate and if sold, will fully pay this claim. The initial listing price was $1,500,000. It is presently listed for sale at $1,350,000. The only other expenses that would need to be paid at closing are broker/realtor fees and real estate taxes/liens totaling approximately $106,000. The claim against this Debtor is contingent.

2.3    Claim Three includes the claim of Optima, LLC, secured by a junior Deed of Trust on Debtor's real estate. The amount of Optima's Claim, as of July 1, 2021, was $604,750.83. This claim was disputed. The Debtor and Optima, LLC have reached an agreement

as set forth in paragraph 4.3 below. The Debtor pledged its real estate to secure the Promissory Note.

      2.4     Claim Four includes the claim of Ford Motor Credit ("Ford") (Claim #2), secured by a 2019 Ford Edge, VINxxx61451. The amount owed to Ford, as of 7/1/21, was $20,783.23. There is no interest on this loan. The Debtor is required to pay $593.82 for 59 months and $593.35 for the 60th month. The Debtor agrees to pay the reasonable attorneys' fees as Ford is oversecured. The loan should pay off by 5/8/25.

      2.5     Claim Five includes the claim of Ford Motor Credit ("Ford") (Claim #3), secured by a 2019 Ford Transit Van, VIN xxx96022.The amount owed to Ford, as of 7/1/21, was $11,932.29 The interest rate on this loan is 9.59% per annum. The Debtor is required to pay $435.66 for 60 months. The Debtor agrees to pay reasonable attorneys' fees as Ford is oversecured. The loan should pay off by 1/27/25.

      2.6     Claim Six includes the claim of Citizens Bank & Trust Company ("Citizens"), which extended a loan to Park Reserve LLC, a limited liability company which is owned in part by the Debtor. Debtor guaranteed the debt. The balance owed to Citizens, according to its Proof of Claim, is $7,318,202.21. Citizens filed suit and established a general receivership in the Circuit Court of Jackson County, Missouri. The receiver has a sale pending for the real estate owned by Park Reserve, LLC. According to Citizens' counsel, the sale is expected to close in September, 2022. Citizens has agreed to waive any deficiency claim it may have against the Debtor provided the Debtor retains its real estate (the cave property).

      2.7.    Class Seven includes the claim of CIT Bank NA for the sixty (60) month lease of a Xerox copy machine, account ending in 9575. The lease payments are $590.06 per month plus additional charges as set out in the lease agreement. The lease began in April, 2019 and the lease expires with March, 2024. The terms of the lease include a provision of automatic renewal for three (3) months and thereafter, on a month-to-month basis. It filed a claim, which was listed as an unsecured non-priority claim in the prior plans. It is listed as Claim #5.

      2.8     Class Eight includes the claim of Pitney Bowes for the sixty-three (63) month lease of a postage machine, account ending in 7174. The lease payments are $80 per month, payable at $240/quarter until November, 2023.

      2.9     Class Nine includes the claim of Kansas City Cold Storage for the lease of the entire warehouse freezer space and other space pursuant to a Lease dated 3/1/19. The Lease runs until 2/28/29 and has two options. Kansas City Cold Storage shall pay to Debtor as set forth in the Lease the basic rent of $127,500/month. There is a separate provision for payment of utilities and a cost-of-living increase.

      2.10    Class Ten includes the claim of Lease Consultants Corporation for the purported lease of a floor scrubber and sweeper. The terms of the lease, which was executed on 6/21/21, is for 36 months at $713.79/month. Balance as of 1/1/22 is approximately $21,413.70.

  2.11 Class Eleven includes the claim of E3 HR Inc. for the executory contract to lease employees and provide payroll services. This is a yearly contract which renews automatically for successive yearly terms unless terminated by either party.

  2.12 Class Twelve includes the claim of Empire Holding, Inc., U.S. Patriot Services, American Veteran KCA, and American Veteran STLA (collectively "Empire"). Empire had entered into an agreement to lease certain space in the caves as well as have the Debtor provide certain services (transporting caskets upon the death of a veteran).

  2.13 Class Thirteen includes all Allowed Unsecured Priority Claims for claims of the Internal Revenue Service, Missouri Department of Revenue, California Franchise Tax Board and City of Kansas City. Recently, 2017-2020 federal, Missouri and Kansas City tax returns (fiscal year: June 1-May 31) were finalized, signed and mailed on April 26, 2022. The tax liabilities are as follows (per the Amended Proofs of Claim filed by the taxing authorities):

| | |
|---|---|
| Internal Revenue Service: | 2018-2020 income tax and interest: $357,568.45 |
| Missouri Department of Revenue: | 2018-2020 income tax and interest: $122,853.89 |
| City of Kansas City: | 2018-2020 income tax and interest: $ 36,670.02 |
| City of Kansas City (claim filed) | 2019 Business License: $ 110.76 |
| California Franchise Tax Board (Claim filed) | $ 3,392.72 |

  TOTAL UNSECURED PRIORITY CLAIMS: $520,595.84

  2.14 Class Fourteen includes all Allowed General Unsecured Non-Priority Claims of vendors, service providers, unsecured lenders, and non-priority unsecured taxes. This class includes (per Proofs of Claim filed by creditors or per Orders of Court once objections filed/resolved):

  Claim #1 Missouri Department of Revenue $2,815.02
  Claim #4 All Environmental, Inc. dba AEI Consultants $2,300*
  Claim #6 Internal Revenue Service $500
  Claim #9 MarksNelson, LLC $4,171.29
  Claim #11 Adam N. Leon dba Lion's Plumbing $8,585.41*
  Claim #13 Franchise Tax Board (California) $423.21
  Claim #15 Presto-X $918.00
  Claim #16 Robert Taylor settled for $18,000
  Claim #20 Lester Daniels settled for $50,000
  Claim #21 Evergy, Inc. $31,766.46
  Claims #22-33 CCC Capital Investments, LLC settled for $150,000
  Claim #35 Servicemaster DSI $6,950.11
  Claim #37 Philip Klawuhn & Associates P.C. $50,933
  Claim #40 Richard Turner objection sustained and allowed for $53,538.27

  The Claims listed above total $380,900.77

*Portions of Claim of #4 and #11 as shown in the following paragraph with objections sustained.

There are a number of claimants in this class who filed Proofs of Claim and the Debtor filed objections to said Proofs of Claim. Those objections have been granted. These claimants include:

Claim #4 All Environmental, Inc. dba AEI Consultants   $524.02 (objection granted)
Claim #11 Adam N. Leon dba Lion's Plumbing $12,300.00 (objection granted)
Claim #12 XPO Logistics Freight, Inc. $0 (objection granted)
Claim #34 Wayne Reeder $4,750,000, which has now been withdrawn.

2.15    Class Fifteen includes the Allowed General Unsecured Non-Priority Claims of those individuals and/or companies who assert a claim by virtue of some act that caused damage to said individuals and/or companies and who may be covered by insurance. This class includes:

Claim #17 Kline Van and Specialty Rental (asserted $11,500,000 in its Proof of Claim) Claim withdrawn.
Claim #38 Ashley Morgan (asserted unliquidated amount in her Proof of Claim) Claim withdrawn.
Claim #39 Ian and Danielle Young (asserted unliquidated amount in their Proof of Claim) Claim withdrawn.

2.16    Class Sixteen includes the penalties owed to taxing authorities. This class includes:

Missouri Department of Revenue Claim #1: $26,395.00
City of Kansas City Claim #8:            $ 7,198.29
Internal Revenue Service (not yet assessed):  unknown

The total assessed penalties (per Proofs of Claim filed) are $33,593.29

2.17    Class Seventeen includes the equity interest of Sammy Jo Reeder, the sole shareholder of the Debtor.

2.18.   Class Eighteen includes all Allowed Administrative Claims, whether incurred before or after the Confirmation Date, allowable under §330 and §503(b) of the Bankruptcy Code, and which are entitled to priority payment under §507(a)(1) of the Bankruptcy Code. The Claims of this Class include attorneys' fees and accounting fees for post-petition services rendered to the Debtor on and after the Filing Date. These Claims also include Claims of the United States Trustee to the extent of any quarterly fees due under 28 U.S.C. §1930(a)(6) as of the Confirmation Date and post-petition taxes, if any.

III. DESIGNATION OF IMPAIRED CLASSES

3.1    Classes 1, 2, 3, 4, 5, 6, 14, 16 and 17 are impaired by the Plan.

## IV. TREATMENT OF CLAIMS AND INTERESTS

4.1.   The Class One Claim shall be paid as follows:  Debtor shall pay Woodmen the unpaid principal balance at the Note's rate of interest of 6.81%, with monthly payments of principal and interest.  The Debtor will amortize the principal balance over a fifteen (15) year period; and the Note will balloon at the end of three (3) years after the Effective Date.  The monthly payment will also include an escrow for real estate taxes. See Exhibit B to Third Amended Disclosure Statement (Projections: line item is Mortgage-Woodmen).

Debtor will actively seek to refinance this loan to pay off Woodmen (after confirmation of the Plan).  If Debtor is unable to refinance this loan, the monthly payments will continue after the Effective Date for a maximum of three (3) years, at which time the unpaid balance shall be due and payable. Debtor expects to be able to refinance the balance owed at the end of the three (3) years as further explained in the Disclosure Statement.

Once the claim is paid in full, Woodmen will release the Deed of Trust currently recorded against the Debtor's real estate and its lien on all personal property. Woodmen is an over-secured creditor and is entitled to reasonable attorneys' fees. The attorneys' fees shall be paid as follows: $15,000 upon the Effective Date; up to $10,000 within 60 days thereafter and the balance, if any, within 180 days thereafter.  Class 1 is impaired.

4.2.   The Class Two Claim shall be paid as follows: The Andersons have been paid $3,109,466.02 from the sale of the Weld Wheel properties in Jackson County, Missouri (owned by a subsidiary: Interstate Underground Warehouse, LLC). After the closing of the sale of the Weld Wheel properties, the Andersons were still owed $868,000. The Harrisonville Care Center property in Cass County, Missouri is listed for sale at $1,350,000.  The Debtor expects that the balance owed to Andersons should be paid in full from its sale.  The following alternatives have been agreed to between the Debtor and the Andersons should the Harrisonville property not sell or not sell for a sufficient amount to clear the Anderson debt.

(a)   <u>Sale</u>:  In the event the Harrisonville Care Center property in Cass County, Missouri is sold but the proceeds are insufficient to pay the Anderson Promissory Note in full according to its terms, the Debtor shall pay the deficiency balance in even monthly payments amortized over a One Hundred Eighty (180) month period, with a balloon payment of the entire balance three (3) years from the Effective Date of the Plan.  The interest rate on the balance, beginning with January 31, 2022, shall be reduced from eleven percent per annum (11%) to nine percent per annum (9%).  The first monthly payment shall be on the first day of the month following the Effective Date.

(b)   <u>Foreclosure</u>:  If, within twelve months after Confirmation of the Plan, a sale of the Harrisonville Care Center property in Cass County, Missouri has not closed, the Andersons may foreclose their Deed of Trust and any balance remaining on the Anderson Note, after applying the proceeds of the foreclosure sale, shall be paid by the Debtor in even monthly payments amortized over a One Hundred Eighty (180)

    month period, with a balloon payment of the entire balance three (3) years from the Effective Date of the Plan. The interest rate on the deficiency, beginning on the date the proceeds of the foreclosure sale are paid to Anderson, shall be reduced to five percent per annum (5%).

    (c)    <u>Chapter 11 by Harrisonville Senior Care Center, LLC</u>: In the event Harrisonville Senior Care Center, LLC files a Chapter 11 proceeding, payments on the balance on the Anderson note as of that time shall be made by the Debtor [Interstate] in even monthly payments amortized over a One Hundred Eighty (180) month period, with a balloon payment of the entire balance three (3) years from the Effective Date of the Plan. The interest rate on the deficiency beginning on the date proceeds of the sale are paid to Anderson shall be reduced to five percent per annum (5%). Whatever is realized from the Harrisonville Senior Care Center, LLC Chapter 11 proceeding shall be credited against the balance owed by the Interstate Debtor.

    Once the claim is paid in full, the Andersons will release the Deed of Trust currently recorded against the Debtor's real estate. Class 2 is impaired.

    4.3    Class Three Claim shall be paid as follows: Optima, LLC's claim was disputed. The Debtor and Optima, LLC have reached an agreement whereby the Debtor would owe $273,169.20. Interest on this unpaid balance will begin to accrue on the Effective Date. It would be paid with the modified interest rate of 5% per annum, amortized over twenty (20) years, with monthly payments beginning on the Effective Date of $1,802.80 per month. Once this balance of principal and interest, as modified herein, are fully paid, Optima LLC will release its Deed of Trust against Debtor's real property. Class 3 is impaired.

    4.4    Class Four Claim shall be paid as follows: Ford Motor Credit's claim is secured by a 2019 Ford Edge, VINxxx61451. The amount owed to Ford, as of 7/1/21, was $20,783.23. There is no interest on this loan. The Debtor is required to pay $593.82 for 59 months and $593.35 for the 60th month. Ford Motor Credit as an over-secured creditor and is entitled to reasonable attorneys' fees which shall be included in the remaining balance so that it can be amortized and paid off by 5/8/25. Once paid off, the lien against the 2019 Ford Edge will be released Class 4 is impaired.

    4.5    Class Five Claim shall be paid as follows: Ford Motor Credit's claim is secured by a 2019 Ford Transit Van, VIN xxx96022.The amount owed to Ford, as of 7/1/21, was $11,932.29 The interest rate on this loan is 9.59% per annum. The Debtor is required to pay $435.66 for 60 months. Ford Motor Credit as an over-secured creditor and is entitled to reasonable attorneys' fees which shall be included in the remaining balance so that it can be amortized and paid off by 1/27/25. Once paid off, the lien against the 2019 Ford Transit Van will be released. Class 5 is impaired.

    4.6    Class Six Claim shall be paid as follows: Citizens filed a Petition for Receivership in the Circuit Court of Jackson County, Missouri. The Receiver appointed in the Jackson County case is selling the Park Reserve, LLC real property located near 31st and Broadway in Jackson

County, Missouri. Citizens claims that the Debtor signed a guaranty for the Park Reserve, LLC debt. The sale is scheduled to close in September, 2022. If the Park Reserve, LLC's real property is not sold for a sufficient amount to pay Citizens in full, the deficiency balance shall be treated as a Class Fourteen Claim. Claim 6 is impaired.

4.7   Class Seven Claim shall be paid as follows: The CIT Bank, NA lease shall be assumed. The lease payments are $590.06 per month plus additional charges as set out in the lease agreement. The lease began in April, 2019 and the lease expires with March, 2024. The terms of the lease include a provision of automatic renewal for three (3) months and thereafter, on a month-to-month basis. Claim 7 is not impaired.

4.8   Class Eight Claim shall be paid as follows: The Pitney Bowes lease shall be assumed and for the sixty-three (63) month lease of a postage machine, account ending in 7174. The lease payments are $80 per month, payable at $240/quarter until November, 2023. Class 8 is not impaired.

4.9   Class Nine shall be treated as follows: Kansas City Cold Storage is the lessee and the Debtor is the lessor for the lease of the Debtor's entire warehouse freezer space and other space pursuant to a Lease dated 3/1/19. The Lease runs until 2/28/29 and has two options. Kansas City Cold Storage shall pay to Debtor as set forth in the basic rent of $127,500/month. There is a separate provision for payment of utilities and a cost-of-living increase. Said unexpired lease shall be assumed. Class 9 is not impaired.

4.10   Class Ten shall be treated as follows: The Lease Consultants Corporation for the lease of a floor scrubber and sweeper will be assumed. The terms of the lease, which was executed on 6/21/21, is for 36 months at $713.79/month. Class 10 is not impaired.

4.11   Class Eleven shall be treated as follows: The E3 HR Inc. agreement is an executory contract to lease employees and provide payroll services and will be assumed. Class 11 is not impaired.

4.12   Class Twelve shall be treated as follows: Class Twelve shall be treated as follows: Empire and the Debtor have reached a resolution whereby the Storage and Delivery Agreement (which agreement was executed December 1, 2010) is being assumed by the Debtor subject to certain agreed modifications. The Storage and Delivery Agreement provided for the storage and delivery of caskets for veterans of the armed services. The modifications include changes to the Debtor's obligation to deliver the caskets, Empire's removal of damaged caskets and returning the repaired caskets, and ultimately, removing the remaining caskets at the end of three years. The Debtor and Empire filed a *Stipulated Motion for Assumption of Agreement* on July 12, 2022 (Doc. No. 474) and the deadline for objections was August 2, 2022. No objections were filed, and the Court approved the Motion. Class 12 is not impaired.

4.13   Class Thirteen are Allowed General Unsecured Priority Claims shall be paid as follows: The 2017-2020 taxes owed to the Internal Revenue Service will be paid with $60,000 by the Effective Date, and the balance, along with other tax claims in this Class to be paid in full at

the prevailing interest rate established by the respective taxing authority, over the remainder of the five (5) year period (ending 6/30/26). The monthly payments shall commence thirty (30) days following the Effective Date and will complete within sixty (60) months of the petition filing date. Debtor's projections reflect annual distributions of $144,000, which should pay this class in full with interest at the applicable interest rates. Class 13 is not impaired.

4.14    Class Fourteen Claims shall be paid as follows: Allowed General Unsecured Non-priority Claims will be paid in full within sixty (60) days of the Effective Date. Class 14 is impaired.

4.15    Class Fifteen Claims shall be paid as follows: There are no claims in this class.

4.16    Class Sixteen Claims are Allowed General Unsecured Tax Penalties. These claims shall be paid in full with monthly payments of 1/60 of the balance without interest. Penalties are treated by the Bankruptcy Code as a subordinated debt to the general unsecured nonpriority claims. Due to this subordinated classification, the Debtor can create a separate class for the tax penalties.

The Internal Revenue Service has not yet assessed the taxes owed for the recently filed returns and therefore, has not yet assessed penalties. The Internal Revenue Service penalties, along with the penalties owed to the City of Kansas City and the Missouri Department of Revenue, will be paid as stated in this paragraph. Class 16 is impaired.

4.17    Class Seventeen includes the equity interest of Sammy Jo Reeder. She shall retain her equity ownership in the Debtor. No distributions, except for salary, shall be made to Sammy Jo Reeder until such time as all payments to Allowed Unsecured Creditors in Class 14 are paid in full as provided in the Plan. Class 17 is impaired.

In exchange for her continued equity interest in the Debtor, Sammy Jo Reeder has contributed the following to the Debtor since the filing of the petition:

> 7/27/21: Sammy Jo Reeder paid CRS Custom Refrigeration Services the sum of $120,000 for a new compressor for the cave's refrigeration system.

> 10-12/2021: Sammy Jo Reeder initially sent $100,000 to Armstrong Teasdale law firm for its retainer as counsel for the Debtor. When Armstrong Teasdale law firm could not serve as Debtor's counsel, it applied a portion of the $100,000 toward its unpaid balance and Sammy Jo Reeder contributed the remainder of $49,122.16 to the Debtor.

4.18    Class Eighteen Claims are the administrative claims. These are the Allowed Administrative Claims, whether incurred before or after the Confirmation Date, allowable under §330 and §503(b) of the Bankruptcy Code, and which are entitled to priority payment under §507(a)(1) of the Bankruptcy Code. The Claims of this Class include attorneys' fees and accounting fees for post-petition services rendered to the Debtor on and after the Filing Date. These Claims also include Claims of the United States Trustee to the extent of any quarterly fees

due under 28 U.S.C. §1930(a)(6) as of the Confirmation Date and post-petition taxes, if any. All quarterly fees owing to the United States Trustee shall be paid by the Debtor within 10 days of the entry of the order of confirmation or on the Effective Date of the Plan as required by §1129(a)(12) of the Bankruptcy Code, and the payment of quarterly fees shall be made until the case is closed by order of the Court, as required by Public Law 104-99, Title II, §211, 110 Stat. 37 (effective January 27, 1996), as amended by Public Law 106-208, 110 Stat. 3009 (September 30, 1996). Class Eighteen is not impaired.

      4.19    Debtor shall have thirty (30) days after confirmation of the Plan within which to object to any Claim filed in the case. Any Claim not objected to within such period shall be deemed accepted.

## V. PROVISIONS FOR IMPLEMENTING THE PLAN

      5.1    The Debtor shall continue in possession of its assets and shall continue the operation of its business.

      5.2    Nothing contained herein or affecting these proceedings, including a lapse in or cessation of business operations, or a change of business purpose, shall cause or shall be deemed to cause any involuntary dissolution of the Debtor's business unless such dissolution is required as a matter of law.

      5.3    The Debtor shall be authorized to execute and deliver all documents and to take or cause to be taken all action necessary or appropriate to execute and implement the provisions of the Plan.

## VI. EXECUTORY CONTRACTS AND UNEXPIRED LEASES

      6.1    The leases and agreements described in Classes 7 through 12 shall be assumed.

      6.2    All remaining executory contracts are assumed under the Plan. All remaining unexpired leases with tenants of the caves are assumed.

      6.3    For any executory contract that is rejected and results in alleged damages to the non-debtor party, a proof of claim must be timely filed with the Bankruptcy Court and served on the Debtor's counsel. Such Claim shall be treated as a Class Fourteen Claim to the extent of its allowance.

## VII. RETENTION OF JURISDICTION

The Court shall retain jurisdiction of this case pursuant to the provisions of the Bankruptcy Code until the proceedings are closed, more specifically with respect to the following matters:

  7.1 To classify, allow or disallow Claims and direct distributions of funds under the Plan and to adjudicate all controversies concerning classification or allowance of any Claim or interest.

  7.2 To enforce performance of the Plan or any provisions thereof.

  7.3 To hear and determine all Claims arising from the rejection of executory contracts, including leases, and to consummate the rejection and termination thereof.

  7.4 To liquidate damages or estimate Claims in connection with any disputed, contingent or unliquidated Claims.

  7.5 To adjudicate all Claims to an ownership interest in any property of the Debtor or of the estate or any proceeds thereof.

  7.6 To adjudicate all Claims or controversies arising out of the purchases, sales or contracts made or undertaken by the Debtor during the pendency of the proceedings.

  7.7 To recover all assets and properties of the Debtor wherever located.

  7.8 To hear and determine matters concerning state, local and federal taxes pursuant to, <u>inter alia</u>, §346, 505, 525 and 1146 of the Bankruptcy Code.

  7.9 To hear and determine and pass upon any action or proceeding brought by the Debtor including, but not limited to, actions pursuant to §542, 543, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code.

  7.10 To hear and determine all actions and proceedings brought by the Debtor, arising in or relating to the Debtor's reorganization case or any issue arising under the Bankruptcy Code.

  7.11 To determine the validity, extent and priority of all liens against property of the Debtor's estate.

  7.12 To consider any modifications of the Plan pursuant to §1127 of the Bankruptcy Code and/or modification of the Plan after substantial consummation as defined in §1101(2) of the Bankruptcy Code.

  7.13 To hear and determine all controversies, suits and disputes that may arise in connection with the interruption or enforcement of the Plan.

  7.14 To hear and determine such matters and make such orders as are consistent with the Plan and as may be necessary or desirable to carry out the provisions thereof.

  7.15 If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction or is otherwise without jurisdiction over any matter arising out of these proceedings,

including the matters set forth herein, or if the Debtor elects to bring an action in any other forum, this Article VII shall have no effect upon and shall not control, prohibit or limit the exercise of any jurisdiction by any other court having jurisdiction with respect to such matter.

## VIII. GENERAL PROVISIONS

8.1    No entity may commence or continue any action or proceeding or perform any act to interfere with the implementation and consummation of this Plan and the payments to be made hereunder.

8.2    Notwithstanding any other provision of the Plan specifying a date or time for payment or distribution hereunder, payments and distributions in respect of any Claim or interest which at such date or time is disputed, unliquidated or contingent shall not be made until such Claim or interest becomes an Allowed Claim, whereupon such payments and distributions shall be made promptly pursuant to and in accordance with the Plan.

8.3    In the event that this Plan is not confirmed under the provisions of §1129(a) of the Bankruptcy Code, the Debtor reserves the right to amend or modify this Plan so as to comply with the confirmation requirements of §1129(a), or to seek confirmation under the provisions of §1129(b) of the Bankruptcy Code.

## IX. MODIFICATION

9.1    The Debtor may propose amendments or modifications to the Plan at any time prior to the Confirmation Date with the approval of the Bankruptcy Court.

9.2    After the Confirmation Date and before substantial consummation, the Plan may also be modified or amended, but only after notice and a hearing, and with the approval of the Bankruptcy Court.

9.3    The holder of an Allowed Claim who has accepted or rejected the Plan is deemed to have accepted or rejected any modified or amended Plan unless, within such time as may be specified by the Court, the holder changes its previous acceptance or rejection.

Date  8/5/2022             INTERSTATE UNDERGROUND WAREHOUSE
                           AND INDUSTRIAL PARK, INC.

KRIGEL & KRIGEL, P.C.         By /s/ Leslie Reeder
/s/ Erlene W. Krigel          Leslie Reeder, CEO
Erlene W. Krigel,   No. 29416
4520 Main Suite 700
Kansas City, Missouri 64111
Telephone: (816) 756-5800
ATTORNEYS FOR DEBTOR